BACHAND *v.* ROSEMURGY.

1. MOTOR VEHICLES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—WRONG SIDE OF ROAD.

    In action for damages caused by automobile collision, where plaintiff claimed that defendant's car was on wrong side of road as it came over crest of hill, resulting in collision, finding of trial court that driver of defendant's car was negligent and, that there was no contributory negligence on part of plaintiff or driver of his car, *held*, justified by record.

2. DAMAGES—EXCESSIVE VERDICT—PERMANENT INJURIES.

    Where there was evidence that plaintiff, 20 years of age, was earning from $2.25 to $6 per day prior to injury sued on, that loss of earnings and money expended for medical and hospital expenses up to time of trial were in excess of $2,000, that said injury has rendered him a helpless cripple, that he requires constant attention, and will probably always be bed patient, verdict for $35,000, although large, *held*, not excessive, under circumstances.

As to duty in operating automobile at curve, or on hill, see annotation in 57 A. L. R. 589, 595.

As to excessiveness of verdicts for personal injuries not resulting in death, see annotation in L. R. A. 1915F, 30, 475; 46 A. L. R. 1230.

Appeal from Gogebic; Driscoll (George O.), J. Submitted October 20, 1932. (Docket No. 166, Calendar No. 36,832.) Decided January 3, 1933. Rehearing denied March 2, 1933.

Case by Roger Bachand, by next friend, against Alex Rosemurgy for personal injuries received in an automobile collision. Judgment for plaintiff. Defendant appeals. Affirmed.

*Frank E. Hook* and *Alvin L. Rummel* (*William S. Baird*, of counsel), for plaintiff.

*Ivan D. Wright* and *Charles M. Humphrey*, for defendant.

Sharpe, J. A Chevrolet coupe, owned by the plaintiff, Roger Bachand, and in which he was riding but driven with his permission by his companion, Willis Pennock, collided with a Packard car, owned by the defendant but driven by his son William, who was accompanied by his companion, Reuben Johnson, on U. S. highway No. 2 at a point in the city of Bessemer about 2.30 a. m. on July 4, 1931. All four were injured, plaintiff very seriously. Plaintiff was at that time 20 years of age, and this action is brought by Edward Bachand, his father, as next friend, to recover the damages he sustained incident thereto. The case was tried before the court without a jury. He found that the accident occurred through the negligence of the driver of defendant's car and without contributory negligence on the part of plaintiff or the driver of his car. He fixed the damages which plaintiff had sustained at the sum of $35,000, and entered a judgment for that amount, from which defendant has taken this appeal.

The collision occurred on the slope towards the east of a small hill on the road leading to the west out of Bessemer. The highway at that point has a tarvia surface 20 feet in width, with shoulders approximately 8 feet in width on each side. The four young men were the only eyewitnesses thereto. Pennock, called by the plaintiff, testified that as the car he was driving proceeded up the hill towards the west at a speed of from 15 to 18 miles per hour he saw the reflection of the headlights on defendant's car when it was about 250 feet from him; that he was driving on the north side of the pavement, the center line of which was plainly marked; that when defendant's car appeared over the crest of the hill it was but about 20 feet from plaintiff's car, and was then nearly its entire width on the north side of the pavement; that he applied the brakes and attempted to swing the car he was driving to the right, and that it had almost stopped when defendant's car collided with it at a point about three feet north of the center line of the road. The testimony of the plaintiff was to the same effect.

William Rosemurgy, the driver of defendant's car, testified that he saw plaintiff's car approaching when 200 or 300 feet from it; that it was then on the south side of the pavement; that he stayed on his own side of the road, thinking that the other car would go over to its proper side, and that, as it did not move over, when about 20 or 25 feet from it he drove his car "over on the left-hand side of the road to try to get out of the accident." When asked whether plaintiff's car was south of the center line of the road, he answered:

"I couldn't say. He may have been on the center line or he may have been either way. I couldn't see the center line. I didn't look for it."

Reuben Johnson testified to the same effect. They both estimated the speed of their car at the time of the collision at from 40 to 50 miles per hour.

It is conceded that plaintiff's car was badly wrecked. It was found with its front end at or near the center line of the road. Defendant's car was found in the ditch on the north side of the road. Its front was badly damaged. Witnesses who thereafter examined the cars and the highway seem agreed that there was a head-on collision. The question presented to the trial court, and as we think on which decision must rest, is whether defendant's car was on the wrong side of the road when it came over the crest of the hill. If it was not, no negligence on the part of the defendant was established. If it was, the evidence clearly tends to show that the collision was caused thereby.

The trial court in his opinion discussed this matter at some length. He heard and saw the witnesses, and was familiar with the place where the accident occurred. It seems to have been quite near the courthouse at Bessemer where the trial was had, and the attention of some of the witnesses was called to it from a window in that building. He concluded that the accident occurred by reason of the negligence of the driver of defendant's car, and found that there was no contributory negligence on the part of plaintiff or the driver of his car. One of his reasons was thus stated:

"Defendant's explanation of the presence of its car at the place where it was when the collision occurred is not satisfactory. If, as it claims, plaintiff's car was partially over on the south side of the road, there was still ample room to pass plaintiff's car on the right."

After due consideration of the proofs submitted and the argument of counsel, we can but say that the conclusion reached by the trial judge meets with our approval, and that the plaintiff is entitled to recover.

As before stated, the trial court fixed the damages which plaintiff has sustained at the sum of $35,000. Defendant claims it is excessive. In cases of this kind, when tried before a jury, there is always uncertainty as to the allowance made for each of the several elements of damages to which a plaintiff may be entitled. In the opinion filed by the trial court he discussed these questions at length. After referring to the injuries plaintiff sustained, he quoted from the testimony of Dr. Wacek, under whose constant care he had been while in the hospital:

"His condition at the present time is that of a helpless cripple. He can't help himself. He requires a great deal of attention, because from the waist down he is completely paralyzed. He had to be catheterized a variable number of times a day, depending on his general condition, but his average is three. These catheterizations are not the same number of hours apart. It depends on how much water he drinks. When he has one of those upsets he has to be catheterized quite frequently; sometimes every two hours."

To this the trial court added:

"He has a complete paralysis of the lower bowel. In order to have a bowel movement he has to have an enema. It has to be done every other day. He has to have bland oil either every day or every other day. He has to be very carefully watched for the least signs of any infection, not only of his lower extremities, but general body infection; sim-

ple colds. His position has to be constantly changed and his body examined so that no pressure sores develop. He cannot lie in a prone position at all. He has to be on one side or the other. Then he cannot lie for any length of time without having pain in his face. * * *

"Plaintiff's second lumbar vertebra is fractured and probably split. It is dislocated as well. There is a small splinter protruding from the body of it. There is a complete tearing of the spinal cord. The leg muscles have atrophied to about one-third of their normal size. He has a complete severance of the spinal cord. He is totally and permanently disabled. There is no chance for improvement. He will always be a bed patient as he is now, but he might possibly be in a specially constructed wheelchair costing from $50 to $150."

That he suffers much pain is also apparent from the testimony of Dr. Wacek:

"But he complains continuously of pain about an inch and a half or two inches above the site of the injury. It is continuous. * * * I think the record shows that in a number of instances it was severe enough to require a narcotic, but we have held that off because it wouldn't be much of a trick to make this boy a dope addict. When he is turned in a certain tilting position you can see the pain, because his face is indicative of it."

Plaintiff's earnings prior to his injury had been from $2.25 to $6 per day. Based on a probable earning of $1,200, the trial court found that the present worth of his prospective earnings was $26,828.83, which he reduced to $21,500. His loss of earnings during the five months that elapsed before the trial and the moneys expended for medical and hospital expenses were in excess of $2,000. The damage to his car was fixed at $100.

All of the doctors who testified were uncertain as to the time he would probably live. Based upon their testimony, the trial court fixed this time at four years, and he found that the present worth of his medical and hospital expenses during that time was $13,009.95. He deducted therefrom the sum of $1,200 for the board and lodging he would otherwise have been compelled to pay. The total of these sums is $35,409.95. He then alluded to the fact that in reaching the amount no allowance had been made for pain and suffering in the past and future, and concluded that a judgment for $35,000 should be entered.

It is seldom, if ever, that so pitiable a case as this has been presented to this court. But our sympathy for the plaintiff in the physical condition he now is in, and ever will be, must not control our judgment as to the damages which should be awarded him. The findings of the court above referred to are all based upon the undisputed testimony of witnesses except perhaps the time which the plaintiff may yet live. While the verdict is a large one, we can but say that after a careful examination of the record we are in agreement that it should not be reduced.

Attention may properly be called to our decisions in *Fishleigh* v. *Railway,* 205 Mich. 145; *Clumfoot* v. *St. Clair Tunnel Co.,* 221 Mich. 113, and *Deffenbaugh* v. *Inter-State Motor Freight Corp.,* 254 Mich. 180, in which large verdicts were sustained.

The judgment is affirmed.

McDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.